Louis N. MAROHN and Patricia
Marohn, Plaintiffs,

v.

BURNHAM VAN SERVICES,
INC., Defendant.

No. 78 C 5190.

United States District Court,
N. D. Illinois, E. D.

Oct. 11, 1979.

Stuart Berks, Des Plaines, Ill., for plaintiffs.

Harlene G. Matyas, Chicago, Ill., for defendant.

## MEMORANDUM

LEIGHTON, District Judge.

This is a suit by a man and his wife, both Illinois citizens, against a Georgia corporation, to recover the full value of household goods that were destroyed by fire while in transit in defendant's van between Mississippi and Illinois. Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a); the cause is before the court on defendant's motion for summary judgment under Rule 56, Fed.R.Civ.P. The relevant facts drawn from the pleadings, exhibits, affidavit, and interrogatories are undisputed.

### I.

On December 13, 1977, the United States, through Phillip Hawk, entered into a contract with defendant Burnham Van Services, Inc., a registered interstate shipper, to move the household goods of plaintiffs Patricia and Louis N. Marohn from Biloxi, Mississippi to Glenview, Illinois. Louis Marohn was then a member of the armed services. At all times, the government was acting as plaintiffs' agent. The goods, actually valued at $72,339.04, were released to defendant under a bill of lading, submitted and prepared by the United States, which set forth their "lump sum value" at $15,-000.00. On December 23, 1977, the household goods were totally destroyed by fire while in defendant's possession. Defendant has paid the Treasurer of the United States

$15,000 on plaintiffs' claim, the sum which is the limit of liability set forth in the bill of lading. Plaintiffs claim that the limitation of liability is invalid; and they accordingly seek to recover $32,339.04 from defendant, the amount representing the unrecovered balance of the fair market value of their goods.[1] The sole issue before the court is whether the limitation of liability contained in the government bill of lading is valid.

### II.

The extent of an interstate carrier's liability is controlled by the terms of the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 20(11). *Anton v. Greyhound Van Lines, Inc.*, 591 F.2d 103 (1st Cir. 1978). In pertinent part, the amendment provides that a common carrier may limit liability for actual loss or damage to property received for interstate transit, but only when it does so in compliance with an Interstate Commerce Commission order authorizing it "to establish and maintain rates that are dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property."[2] *See Anton v. Greyhound Van Lines, Inc., supra,* at 107; *Rocky Ford Moving Vans, Inc. v. United States*, 501 F.2d 1369, 1371–72 (8th Cir. 1974); *Strickland Transportation Co. v. United States*, 334 F.2d 172, 175 (5th Cir. 1964). Plaintiffs do not question defendant's authorization by the I.C.C. to carry property at tariff rates dependent upon the declared or released value of the shipment; nor do they dispute that defendant maintained tariff rates approved by the I.C.C. They challenge, however, the limitation of liability contained in the bill of lading on the ground that it was not knowingly acceded to by the shipper, and therefore was not "agreed upon in writing" as required by the Carmack Amendment.

---

1. Plaintiffs have received $40,000 on their claim for the damaged goods: $15,000 from the defendant; $25,000 from collateral sources.

2. The released value of a shipment is the value declared by the shipper and to which he is limited in case of loss or damage to the shipment. *Strickland Transportation Co. v. United States*, 334 F.2d 172, 175 (5th Cir. 1964).

■ What is necessary for the released value of property to be agreed upon in writing by the shipper is well settled. "Congress no doubt used these words to indicate that a shipper should agree in the same sense that one agrees or assents to enter into a contractual obligation." *Anton v. Greyhound Van Lines, Inc., supra* at 108; *Chandler v. Aero Mayflower Transit Co.,* 374 F.2d 129, 135 (4th Cir. 1967). Thus, the shipper may necessarily agree in writing only after he has had the opportunity to inspect the written terms of the agreement, *Anton v. Greyhound Van Lines, Inc., supra* at 107; and his assent is effective only if given after a fair opportunity to elect greater or lesser liability by paying a correspondingly greater or lesser shipping charge. *New York, New Haven and Hartford Railroad Co. v. Nothnagle,* 346 U.S. 128, 135, 73 S.Ct. 986, 990, 97 L.Ed. 1500 (1953); *Chandler v. Aero Mayflower Transit Co., supra* at 135. "Although action in writing by the shipper is plainly required, his signature is not necessary but it does furnish good evidence that he did declare or agree in writing." *Anton v. Greyhound Van Lines, Inc., supra,* at 107; *accord American Railway Express Co. v. Lindenberg,* 260 U.S. 584, 43 S.Ct. 206, 67 L.Ed. 414 (1923).

■ As it is agreed by the parties that the United States government was acting as plaintiffs' agent in this case, the court must apply the principles of contract and agency law to determine whether there was an agreement on the released value of the goods as set forth in the bill of lading. It is well established that a principal is bound by the acts of his agent not only for the precise act which he expressly authorized the agent to do, but also for whatever belongs to the doing of it or is necessary to its performance. *Lux Art Van Service, Inc. v. Pollard,* 344 F.2d 883, 887 (9th Cir. 1965), *cert. denied,* 382 U.S. 837, 86 S.Ct. 85, 15 L.Ed.2d 80 (1965); 2A C.J.S. Agency § 154 (1972). The court therefore concludes that plaintiffs, by giving the United States government authority to ship their goods, also conferred on the government the incidental authority to enter into a valid contract for carriage with defendant. *See Lux Art Van Services, Inc. v. Pollard, supra* at 887; 14 Am. Jur.2d Carriers, § 551 (1964). Thus, if the provision limiting defendant's liability is valid, plaintiffs will be conclusively bound thereby.

■ At the outset, the court notes that shippers are charged with notice of the terms, conditions, and regulations contained in the tariff schedule pertaining to a carrier's liability which, in turn, affect the rates charged for the carriage of goods. *American Railway Express Co. v. Daniel,* 269 U.S. 40, 42, 46 S.Ct. 15, 16, 70 L.Ed. 154 (1925); *American Railway Express Co. v. Lindenberg, supra.* The relevant tariff provisions in effect at the time of the shipment were set forth in the Government and Military Rate Tender, No. I–J, and were specifically noted in the bill of lading. In pertinent part, the tariff provides that shipments moved on government lading will be deemed released to a value of $.60 per pound per article, unless the shipment is expressly released to a declared lump sum value for the entire shipment. A shipper who elects to release the shipment to a valuation charge in excess of the standard rate must pay additional valuation charges.

■ In the government bill of lading submitted to defendant, the standard released valuation clause was crossed out. Directly below the crossed out provision was the typewritten insertion, "Lump Sum Value of Shipment $15,000." While the government agent's signature does not appear on the bill of lading, it is uncontroverted that the government prepared the bill of lading and inserted the lump sum value. It is clear on the face of the bill that the government was given an option as to the released value of the goods and elected to release plaintiff's goods at a value of $15,000, rather than at the standard valuation rate which admittedly would have limited defendant's liability to $8,592.00. Under the Carmack Amendment, where the shipper has been given such an option and has elected to release his goods at a lump sum value, his recovery in the event of loss will

be limited by the release value chosen. *See Adams Express Co. v. Croninger,* 226 U.S. 491, 33 S.Ct. 148, 57 L.Ed. 314 (1913); *Rocky Ford Moving Vans, Inc. v. United States,* 501 F.2d 1369 (8th Cir. 1974). That limitation will be binding even though it may be grossly disproportionate to the actual value of the shipment. *Pierce Co. v. Wells Fargo & Co.,* 236 U.S. 278, 35 S.Ct. 351, 59 L.Ed. 576 (1915). Applying these principles of law, the court finds that the government's voluntary and deliberate insertion of the lump sum value of plaintiffs' goods satisfies the requirement that the shipper agree in writing to the released value; and that defendant, having complied with the Carmack Amendment in all other respects, has effected a valid limitation of liability in the amount of $15,000.

█ Plaintiffs attempt to circumvent the result dictated by the Carmack Amendment by raising allegations of fraud underlying the transaction which they claim vitiate the liability limitation. Irrespective of plaintiffs' failure to raise this issue in the pleadings or to support it by affidavit, the court finds no factual basis for either a finding of fraud or for setting aside the liability limitation. Although under certain circumstances courts have set aside the value limitation and allowed full recovery, this is not a case where the carrier induced the shipper to enter into a contract to carry goods which were ill-suited for the carrier's facilities, *see Mitchell v. Union Pacific Railroad Co.,* 188 F.Supp. 869 (S.D.Cal.1960); nor is this a case where the carrier has purposely converted the entrusted property for its own use or gain, in which case public policy would not permit the carrier to limit its liability and thus profit from its own misconduct. *See, e. g., Glickfield v. Howard Van Lines, Inc.,* 213 F.2d 723 (9th Cir. 1954).

The court concludes that the limitation of liability set forth in the bill of lading was valid and binding; and defendant, having paid plaintiffs $15,000 representing the released value of their property, is relieved from further liability. Accordingly, defendant's motion for summary judgment is granted; the case is dismissed.

So ordered.