**E.J. ROGERS, INC., d/b/a Rogers Jewelers, Plaintiff,**

v.

**UNITED PARCEL SERVICE, INC., a/k/a United Parcel Service Co., a/k/a UPS, and UPS Capital Insurance Agency, Inc., Defendants.**

**No. 2:04–CV–153–LJM–WGH.**

United States District Court, S.D. Indiana, Terre Haute Division.

Sept. 23, 2004.

Michael T. Ellis, Attorney at Law, Terre Haute, IN.

### ORDER ON DEFENDANT'S MOTION TO DISMISS

MCKINNEY, Chief Judge.

This matter comes before the Court on defendant's, United Parcel Service, Inc. ("UPS"), Motion to Dismiss the claims of plaintiff, E.J. Rogers, Inc. ("Rogers"). Rogers brought this action against UPS under the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, and alternatively for breach of contract. Rogers seeks compensation in the amount of $11,063.40, and reasonable attorney fees. In the instant motion, UPS seeks dismissal of Rogers' claim. For the reasons set forth below, the Court DENIES the motion.

## I. BACKGROUND

For purposes of this motion, the Court accepts the following well-pleaded factual allegations from the complaint as true. Rogers is in the business of selling jewelry. Comp ¶ 5. On May 26, 2003, Rogers delivered a 2.64 Ct., H Color, VS2 Clarity, Princess Cut Diamond, with a wholesale value of $10,956.00 to UPS at its Terre Haute customer counter located on State

Road 46, Terre Haute, Indiana, to be delivered to Jeanex Corporation ("Jeanex"). Comp. ¶ 9. Rogers' representative informed a UPS employee, Brent Ennen ("Ennen"), that the item was a loose stone and that Rogers wanted the stone insured for delivery. Comp ¶ 10. UPS agreed to ship the package, insured in the amount of $11,000.00, by UPS Capital Insurance Agency, Inc. ("UPS Capital"), an entity providing insurance coverage on items shipped via UPS. Comp. ¶¶ 7, 11, 13, Exh. C. UPS charged Rogers $63.40 for "Next Day Air" shipping and insurance on the package. Comp. ¶¶ 12, 14, Exh. C. The documentation provided to Rogers did not contain reference to the UPS tariff ("Tariff"). Comp. ¶ 15, Exh. C. UPS failed to deliver the package to its intended destination and failed to return the package to Rogers. Comp. ¶ 16. To date, UPS has failed to locate the package. Comp. ¶ 19. UPS has refused to honor Rogers' claim regarding the package. Comp. ¶¶ 25–29. Rogers fully reimbursed Jeanex for the stone. Comp. ¶ 30.

## II.  JURISDICTION

Rogers filed a complaint against UPS in Vigo County Superior Court, which UPS removed to this Court on June 23, 2004, pursuant to 28 U.S.C. §§ 1331 (federal question) and 1337 (Act of Congress regulating commerce). While at first glance this appears to be a simple contract dispute governed by state law, controlling preemptive statutes, 49 U.S.C. §§ 14501(c)(1) and 41713(b)(4)(A), "preclude the enactment or enforcement of state laws related to the 'price, route or service' of motor carriers and inter-modal ground/air carriers such as UPS." *Mudd-Lyman Sales and Service Corp. v. United Parcel Service, Inc.,* 236 F.Supp.2d 907, 909 (N.D.Ill.2002) (citations omitted). Where Congress has manifested an intent to completely preempt an area of the law, any action arising within the scope of the federal law is necessarily federal by nature. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 66–67, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *Lister v. Stark,* 890 F.2d 941, 943 (7th Cir.1989), *cert. denied,* 498 U.S. 1011, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990). Federal common law occupies the field, and a dispute relating to limitation of liability in an inter-modal carrier contract of carriage, like the one presently before the Court, is properly adjudicated pursuant to the Court's federal question jurisdiction. *See Pierre v. United Parcel Service, Inc.,* 774 F.Supp. 1149, 1151 (N.D.Ill.1991); *United States Gold Corp. v. Federal Express Corp.,* 719 F.Supp. 1217, 1224 (S.D.N.Y.1989); *Angela Cummings, Inc. v. Purolator Courier Corp.,* 670 F.Supp. 92, 94 (S.D.N.Y.1987) (cited with approval in an unpublished opinion of the Seventh Circuit, *Milam Audio Co. v. Federal Express Corp.,* 41 F.3d 1511 (Table), 1994 WL 602716, at 1 (7th Cir.Nov.2, 1994)).

## III.  STANDARD

UPS seeks to dismiss this case under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. When ruling on a motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), the Court accepts as true all well-pleaded factual allegations in the complaint and the inferences reasonably drawn from them. *See Baxter by Baxter v. Vigo County Sch. Corp.,* 26 F.3d 728, 730 (7th Cir.1994). The Court can consider the facts alleged in the complaint as well as documents attached to or incorporated into a complaint when reviewing under a motion to dismiss standard. *See Albany Bank & Trust Co., v. Exxon Mobil Corp.,* 310 F.3d 969, 971 (7th Cir.2002). Dismissal is appropriate only if it appears beyond doubt that plain-

tiff can prove no set of facts consistent with the allegations in the complaint that would entitle it to relief. *See Hi–Lite Prods. Co. v. Am. Home Prods. Corp.*, 11 F.3d 1402, 1405 (7th Cir.1993). This standard means that if any set of facts, even hypothesized facts, could be proven consistent with the complaint, then the complaint must not be dismissed. *See Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994).

Further, plaintiff is "not required to plead the particulars of [its] claim[s]," *Hammes v. AAMCO Transmissions, Inc.*, 33 F.3d 774 (7th Cir.1994), except in cases alleging fraud or mistake where plaintiffs must plead the circumstances constituting such fraud or mistake with particularity. *See* Fed.R.Civ.P. 9(b); *Hammes*, 33 F.3d at 778. "Particularity" requires plaintiffs to plead the who, what, when, where, and how of the alleged fraud. *See Ackerman v. N.W. Mut. Life Ins. Co.*, 172 F.3d 467,

469 (7th Cir.1999); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990). Finally, the Court need not ignore facts set out in the complaint that undermine Plaintiff's claims, *see Homeyer v. Stanley Tulchin Assoc.*, 91 F.3d 959, 961 (7th Cir. 1996) (*citing Am. Nurses' Ass'n v. State of Illinois*, 783 F.2d 716, 724 (7th Cir.1986)), nor is the Court required to accept Plaintiff's legal conclusions. *See Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir.1996); *Gray v. Dane County*, 854 F.2d 179, 182 (7th Cir.1988).

## IV. DISCUSSION

United Parcel Service contends that Rogers has failed to state a claim upon which relief can be granted because, as permitted by federal common law, the UPS shipping contract at issue avoids liability for loss of Rogers' shipment of a loose diamond.[1] Def.'s Mot. Supp. at 4–6.

A shipper can bring a cause of action against an air carrier under federal

---

1. Rogers' claim for damages against UPS has been brought pursuant to the Carmack Amendment, 49 U.S.C. § 14706. Comp. ¶ 32. Although not specifically disputed by the parties, the Court notes that UPS is not subject to liability for any loss or misdelivery of a "Next Day Air" package under § 14706. The Carmack Amendment imposes liability on motor carriers and freight forwarders, such as UPS, that cause loss or injury to property. 49 U.S.C. § 14706(a)(1) provides in pertinent part: "(a) General liability.—(1) Motor carriers and freight forwarders.—A carrier providing transportation or service subject to jurisdiction [of the Secretary of Transportation] under subchapter I or III of chapter 135 shall issue a receipt or bill of lading for any property it receives for transportation under this part...." 49 U.S.C. § 14706(a)(1). Under this section, UPS is subject to liability for any actual loss or injury to property it causes because it is a common motor carrier subject to jurisdiction of the Secretary of Transportation under subchapter I of chapter 135. *See* 49 U.S.C. § 13501.

However, UPS is not liable under the Carmack Amendment because another statute ex-

empts certain ground transportation of property also involving air transportation, like UPS' "Next Day Air" transportation, from liability. 49 U.S.C. § 13506(a)(8)(B) exempts from the Secretary of Transportation's jurisdiction, "transportation of property (including baggage) by motor vehicle as part of a continuous movement which, prior or subsequent to such part of the continuous movement, *has been or will be transported by an air carrier* or ... by a foreign air carrier." 49 U.S.C. § 13506(a)(8)(B) (emphasis added).

Simply stated, the Carmack Amendment applies to ground carriers and is not applicable to air carriers. *See e.g., Arkwright–Boston Mfrs. Mut. Ins. Co. v. Great Western Airlines, Inc.*, 767 F.2d 425, 428 (8th Cir.1985) (additional citations omitted). Nevertheless, the Court, based on the authority cited by the parties in their briefs surrounding the instant motion, construes the complaint broadly, and finds that the Defendant understood Rogers' claim to lie under federal common law, and UPS correctly asserted the same. *See* Def.'s Notice of Removal, ¶¶ 7,8; Def.'s Mem. Supp. at 3; Def.'s Rep. Supp. at 2–5.

common law for goods lost or damaged by the air carrier. *See, e.g., Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 928, 929 (5th Cir.1997). The airbill, receipt, or bill of lading issued by the carrier serves as a "contract for carriage." *S. Pac. Transp. Co. v. Commercial Metals*, 456 U.S. 336, 341, 102 S.Ct. 1815, 72 L.Ed.2d 114 (1982). The airbill can incorporate by reference outside materials limiting liability. *See Sam Majors*, 117 F.3d at 930–31. UPS argues the shipping contract is comprised of the Tariff, the UPS Rate and Service Guide, and the UPS pickup or shipping record, which constitutes the full written agreement between UPS and Rogers. Def.'s Mot. Supp. at 4.

The Tariff in effect in May 2003, then available at www.ups.com, provides: "UPS will not be liable or responsible for the loss of or damage to any package, the contents of which shippers are prohibited from shipping." Def.'s Exh. A, Item 535. Further, the Tariff prohibits the shipment of "articles of unusual value." Def.'s Exh. A, Item 460. Articles of unusual value are defined as including, but not limited to "coins ... currency, postage stamps, negotiable instruments, money orders, *unset precious stones*, industrial diamonds, human remains, and works of art." Def.'s Exh. A, Item 460 (emphasis added). UPS contends that because Rogers shipped an item defined as an "article of unusual value" by the Tariff, Rogers is not entitled to recover for the shipment. Def.'s Mot. at 4–6.

UPS relies on a variety of authority to support its position that the Tariff was incorporated into the airbill and thus was part of the shipping contract between the parties. However, this reliance is not well founded. Virtually all of the cases cited by UPS are distinguishable, because the UPS airbill in this case makes absolutely no reference to the Tariff or other extrinsic documents. *See* Comp., Exh. C. Another district court, in *Apartment Specialists, Inc. v. Purolator Courier Corp.*, 628 F.Supp. 55, 57–58 (D.D.C.1986), cited by UPS, found the contract governing a shipment to consist of the bill of lading, service guide, and tariff, when the bill of lading contained language that the bill was subject to conditions of the contract set forth on the reverse side of the shipper's copy—which included the limitation of liability. *See id.* Further, the bill of lading made express reference to the tariff. *See id.* at 58. In *North American Phillips Corp. v. Emery Air Freight Corp.*, 579 F.2d 229, 234 (2d Cir.1978), also cited by UPS, the Second Circuit affirmed a district court's finding of limited liability, but the bill of lading governing the shipment specifically provided that the goods were received "subject to the classifications and tariffs in effect on the date of the issue of this Bill of Lading," which contained the liability provisions. *Id.* Likewise, in *Commodities Recovery Corp. v. Emery Worldwide*, 756 F.Supp. 210 (D.N.J.1991), another district court upheld a carrier's limitation on liability, but the airbill again contained explicit language referencing the limitation on liability, located on the back of the form. *See id.* at 211.

Finally, UPS bases much of its argument on *Sam Majors Jewelers*, 117 F.3d 922, asserting that it is directly analogous to this case. Def.'s Mot. at 6. The case does contain some factual similarities, in that case the court considered the provisions in a common carrier's shipment contract precluded damages for the shipment of an article of unusual value. However, the front of the airbill in *Sam Majors* directs the shipper to terms and conditions—including a limitation on liability—on the reverse of the airbill. *Id.* at 930.

■ While not binding on this Court, the Fifth Circuit, in *Sam Majors*, em-

ployed a common sense approach to determine whether the liability limiting provision was sufficiently plain and conspicuous to give reasonable notice of their meaning. *See id.* The court used a two-step analysis, which is appropriate, if even for illustrative purposes, particularly in light of UPS' reliance on the case. *See id.* First, the physical characteristics of the airbill are to be examined to determine whether they provide reasonable notice to the customer. *Id.* (*citing Deiro v. Am. Airlines, Inc.,* 816 F.2d 1360, 1364 (9th Cir.1987)). Second, the conditions under which the shipment was made is considered. *Id.* Here, by failing to make reference to the tariff or any additional documentation, UPS would clearly fail the first step of this test, having made absolutely no reference to the tariff and the limitations on liability therein. *See* Comp., Exh. C.

Rogers correctly asserts that the Tariff and service guide were not incorporated into the shipping contract. Pl.'s Resp. at 5–8. The UPS airbill that Rogers completed to ship the package made no reference to the Tariff or any extrinsic documents. Comp., Exh. C. Instead, the only provisions that limit liability refer to UPS' liability for loss or damage if the shipper fails to state a declared value for the item shipped and fails to file a timely claim. *Id.* Furthermore, UPS' employee, Ennen, was informed that the item to be shipped was a loose stone, Rogers declared the value at $11,000, and UPS accepted additional payment of $38.15 to insure the package. Comp. ¶¶ 10, 11, 13, 14, Exh. C. At no time was Rogers informed of the restrictions contained in the Tariff. UPS seeks to make the Tariff a part of the airbill without referring to the former in the latter, and failing to declare that the former shall be taken and considered part of the latter the same as if it were fully set out therein. In essence, UPS seeks to incorporate by reference, *sans* the actual reference.

UPS also asserts it is well-settled in the Seventh Circuit that a shipper has constructive notice of the terms of a common carrier's shipping contract, which includes the common carrier's tariff. Def.'s Rep. Supp. at 3, 5–6 (*citing Maislin Indus. U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 127, 110 S.Ct. 2759, 111 L.Ed.2d 94 (1990) (shippers and travelers are presumed to have notice of the tariff); *Aero Trucking, Inc. v. Regal Tube Co.,* 594 F.2d 619, 622 (7th Cir.1979) (shipper is presumed to have knowledge of the applicable tariff rates); *Marohn v. Burnham Van Servs., Inc.,* 478 F.Supp. 49, 51 (N.D.Ill. 1979) (shipper presumed to be aware of tariff and its provisions); *White v. United Van Lines,* 758 F.Supp. 1240, 1242 (N.D.Ill.1991) ("it is well established that a shipper chargeable with knowledge of a carrier's tariff provisions ... properly published tariffs are incorporated into any agreement with between the shipper and carrier.")). However, the Court finds that the authority cited by UPS does not stand for the particular proposition for which it is offered.

In *Maislin,* the U.S. Supreme Court held that a carrier and shipper may not negotiate a private rate lower than the rate on file with the Interstate Commerce Commission. The Court explained:

> Under the Interstate Commerce Act, the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext.... The rule is undeniably strict ... but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination.

497 U.S. at 127, 110 S.Ct. 2759 (*quoting Louisville & Nashville Ry. Co.,* 237 U.S. at 97, 35 S.Ct. 494). In contrast to the discussion in *Maislin,* the instant case is not

one of deviation, ignorance, or misquotation of the filed rate. The rate filed and charged is not disputed here.

In *Aero Trucking,* the Seventh Circuit rejected the shipper's argument that the shipper was not bound to pay tariff rates because the carrier's agent misquoted the rates. The Seventh Circuit relied on the Supreme Court's statement in *Keogh v. Chicago & Northwestern Ry. Co.,* 260 U.S. 156, 163, 43 S.Ct. 47, 67 L.Ed. 183 (1922), that

> the legal rights of a shipper as against the carrier in respect to a rate are measured by the public tariff. Unless and until suspended or set aside, this rate is made for all purposes, the legal rate, as between the carrier and shipper. The rights as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier.

*Keogh,* 260 U.S. at 162, 43 S.Ct. 47. Again, the instant case involves limitation of liability, not discrepancy in rates charged.

*Marohn* is also distinguishable. While that court noted at the outset that shippers are charged with notice of the terms, conditions, and regulations contained in the tariff schedule pertaining to a carrier's liability which, in turn, affect the rates charged for the carriage of goods, *citing American Railway Express Co. v. Daniel,* 269 U.S. 40, 42, 46 S.Ct. 15, 70 L.Ed. 154 (1925), the relevant tariff provisions in effect at the time of the shipment were *specifically noted* in the bill of lading. *See Marohn,* 478 F.Supp. at 51 (emphasis added).[2]

UPS' argument and use of authority is unpersuasive. UPS is correct that a shipper can bring a cause of action against an air carrier under federal common law for goods lost or damaged by the air carrier, and the airbill can incorporate by reference outside materials limiting liability. *See Sam Majors,* 117 F.3d at 930–31. However, UPS' argument that the availability of a tariff on a website, without reference to that tariff in any documentation provided to Rogers, fails. UPS points to no case, holding explicitly that a shipper is presumed to know every single detail included in a carrier's tariff on file with the Interstate Commerce Commission. The Court is not persuaded that charging a shipper with notice of what the carrier will accept for transportation is on the same level as charging a shipper with constructive knowledge of the lawful rate. Therefore, the Court finds that the mere existence of a tariff, without more, is not sufficient to limit or avoid liability.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's, United Parcel Service, Motion to Dismiss.

---

2. Additionally, the *White* court based its finding on *Aero Trucking,* discussed *supra,* and rejected the proposition offered by UPS. 758 F.Supp. at 1242.