KING JEWELRY, INC.,
Plaintiff–Appellant,

v.

FEDERAL EXPRESS
CORPORATION, Defendant–Appellee.

No. 01–57093.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 4, 2002.

Filed Jan. 16, 2003.

Joseph Daneshrad, Law Offices of Joseph Daneshrad, Los Angeles, CA, for the plaintiff-appellant.

Robert J. Taitz, Shane & Taitz, San Francisco, CA, for the defendant-appellee.

Before D.W. NELSON and T.G. NELSON, Circuit Judges, and SCHWARZER,* District Judge.

T.G. NELSON, Circuit Judge.

King Jewelry, Inc. ("King Jewelry") appeals the grant of partial summary judgment limiting Federal Express Corporation's ("Federal Express") liability for damage to a shipment of candelabra. We affirm because we find that: (1) the district court[1] appropriately found that the candelabra were "items of extraordinary value" as defined in the contract; (2) federal common law governs the limited liability provision; and (3) Federal Express complied with the released valuation doctrine and successfully limited its liability to $500.00 per crate. However, because Federal Express concedes that it should return the excess valuation charge King Jewelry paid, we modify the damages accordingly.

## I. FACTS AND PROCEDURAL HISTORY

This case arises from damage caused to a shipment of candelabra when Federal Express transported them from Florida to California. King Jewelry contracted with a professional packager, Raymie's, in Florida to package and ship the candelabra to California. The candelabra were valued at $37,000.00.

After discussing the shipment with several other companies who refused to ship such a high value item, Raymie's contacted Federal Express. Raymie's asserts that the Federal Express agent advised him that he could pay an extra $185.00 for the declared value of $37,000.00 after Raymie's advised the agent that the items included fragile marble and bronze statuary.

On February 5, 2000, Raymie's paid Federal Express $710.73 to ship the three crates containing the candelabra, declaring a value of $37,000.00. Directly under the section that includes the declared value, the Federal Express airbill states "[w]hen declaring a value higher than $100 per shipment, you pay an additional charge. See SERVICE CONDITIONS, DECLARED VALUE AND LIMIT OF LIABILITY section for further information." The service conditions section provides that "[b]y using this airbill, you agree to the service conditions in our current Service Guide ... available on request. SEE BACK OF SENDER'S COPY OF THIS AIRBILL FOR INFORMATION AND ADDITIONAL TERMS." The airbill further states: "No one is authorized to change the terms of our Agreement,"[2] and that, in case of a conflict between the airbill and the Service Guide, the Service Guide will control. In the declared value limits section, the airbill provides that the

---

* The Honorable William W. Schwarzer, Senior District Judge for the Northern District of California, sitting by designation.

1. The parties consented to proceed before a magistrate judge. We use the term "district court" for convenience.

2. The Service Guide provides that only the Senior Vice President of Marketing and Corporate Communications may modify the agreement. However, the Service Guide allows modifications "applicable to a single customer and included in a FedEx Sales or FedEx Customer Automation Agreement." This provision does not state that the contract may be modified with respect to a single customer by the terms in a Federal Express airbill.

highest declared value allowed is $50,000.00, except for items of extraordinary value, in which case the highest declared value allowed is $500.00.[3]

Both the airbill and the Service Guide contain definitions of "items of extraordinary value." The airbill provides: "Items of 'extraordinary value' include shipments containing such items as artwork, jewelry, furs, precious metals, negotiable instruments, and other items listed in our Service Guide." The Service Guide's definition of extraordinary value items includes: "[a]rtwork, including any work created or developed by the application of skill, taste or creative talent for sale, display or collection [including] but ... not limited to" vases, fine art, statuary, sculpture, collectors' items, and other items particularly susceptible to damage or whose value is difficult to determine; "[a]ntiques, any commodity which exhibits the style or fashion of a past era and whose history, age or rarity contributes to its value [including] but ... not limited to" furniture, tableware, glassware, and collectors' items; and "[g]lassware, including, but not limited to, signs, mirrors, ceramics, porcelains, china, crystal, glass, framed glass, and any other commodity with similarly fragile qualities."

When the candelabra arrived damaged, King Jewelry filed suit in California state court for breach of contract, violation of the insurance code, and tortious breach of an insurance contract. Federal Express removed the case to federal court.

Federal Express moved for partial summary judgment, seeking to limit its liability to $500.00 per crate. King Jewelry disputed that the candelabra qualified as items of extraordinary value. In support of its motion, Federal Express submitted

deposition testimony from the owner of King Jewelry that he purchased the candelabra at a jewelry and antique show. The owner, in the same deposition, described the items as statues made of marble and bronze. In opposition to the partial summary judgment motion, King Jewelry submitted the statement of the shipper, describing the items as "a pair of statues made of marble and bronze." King Jewelry also submitted a statement from an antique dealer stating that the candelabra were not antiques but were "high quality and beautiful candelabras [sic] handmade from the finest white marble with 24 karate gold-wash handmade bronze, valued at approximately $40,000.00."

The district court granted partial summary judgment in favor of Federal Express. The court found that Federal Express's liability for damage to goods shipped in interstate transit was governed by federal common law. Therefore, the court held that the airbill and Service Guide comprised the contract between the parties. The court then held that the airbill and Service Guide, in accordance with the requirements of federal common law, provided reasonable notice to King Jewelry of the limits on liability and a fair opportunity to choose higher liability coverage. Finally, the court rejected King Jewelry's argument that the items did not qualify as items of extraordinary value.

## II. JURISDICTION AND STANDARD OF REVIEW

Because King Jewelry timely appealed the grant of partial summary judgment to Federal Express, we have jurisdiction pursuant to 28 U.S.C. § 1291. We review a grant of partial summary judgment *de novo*.[4] We affirm a grant of

---

**3.** The Service Guide provides that any attempt to declare a higher value is null and void.

**4.** *Delta Sav. Bank v. United States,* 265 F.3d 1017, 1021 (9th Cir.2001), *cert. denied,* 534 U.S. 1082, 122 S.Ct. 816, 151 L.Ed.2d 700 (2002).

partial summary judgment if there were no genuine disputes of material fact and the court correctly applied the relevant substantive law.[5]

## III. DISCUSSION

King Jewelry makes a series of arguments in an attempt to recover the full value of the candelabra from Federal Express. It first argues that the candelabra are not "items of extraordinary value" as defined in the contract and, therefore, that the $500.00 per crate limit included in the contract simply does not apply. Second, it contends that, even if the candelabra are "items of extraordinary value," the parties modified the contract pursuant to California law to eliminate the $500.00 per crate limit. Finally, it urges that, should we disagree with both of its previous arguments, Federal Express failed to comport with the requirements of federal common law in order to successfully limit its liability.

Were we to accept any one of King Jewelry's contentions, we would need to reverse; therefore, we must address each argument in order to dispose of King Jewelry's claim. We hold that the district court properly concluded that: (1) the candelabra were "items of extraordinary value"; (2) federal common law governs the limited liability provision; and (3) Federal Express complied with the requirements of federal law and successfully limited its liability.

**A.** *The district court properly concluded that the candelabra were "items of extraordinary value" as defined by the contract.*

■ The district court · correctly concluded that the candelabra fell within the definition of "items of extraordinary value" as provided in the airbill and the Service Guide, which form the contract between the parties.[6] King Jewelry contends that the district court relied upon inadmissible and disputed facts. On the contrary, the record shows that the court did not use the disputed facts to come to its conclusion. The district court properly relied upon a variety of factors, including the owner of King Jewelry's own description of the candelabra as statues in his deposition, to conclude that the candelabra were items of extraordinary value. It did not rely upon the disputed fact that the candelabra were antiques. The description of "items of extraordinary value" in the contract explicitly includes statuary. Because the candelabra were items of extraordinary value, the contract limited Federal Express's liability for damage.

**B.** *Federal common law governs the limitation of liability provision of the contract.*

King Jewelry next contends that the parties modified the terms of the contract pursuant to California law.[7] However, pursuant to the Airline Deregulation Act ("the Act"), federal common law governs contractual clauses that limit interstate carriers' liability for damage to goods shipped by air.[8]

**5.** *Oliver v. Keller,* 289 F.3d 623, 626 (9th Cir.2002).

**6.** Courts look to the airbill's terms to find the terms of the agreement. *See Read–Rite Corp. v. Burlington Air Express Ltd.,* 186 F.3d 1190, 1199 (9th Cir.1999) (examining airbill's terms to "establish [the contract's] liability scheme").

**7.** Even if we were to conclude that the parties' actions could modify the contract, it is unclear why California law would govern because the agreement was entered into in Florida, between Federal Express and a Florida entity, and the candelabra were shipped from Florida.

**8.** *Wayne v. DHL Wordwide* [sic] *Express,* 294 F.3d 1179, 1185 (9th Cir.2002) (describing the Act's savings clause that applies "federal common law to claims for loss of or damage

■ The released valuation doctrine, a federal common law creation, delineates what a carrier must do to limit its liability.[9] Federal law governs limited liability provisions like the one that King Jewelry tried to modify.[10] Accordingly, King Jewelry's reliance on California law is misplaced.

Neither *American Airlines, Inc. v. Wolens*[11] nor *Read–Rite Corp. v. Burlington Air Express*[12] change this conclusion. *Wolens* addressed a different question than that presented in this case: whether the Act preempted the plaintiffs' suit entirely, preventing them from seeking court resolution of their breach of contract claims.[13] Federal Express does not contend that the Act preempts King Jewelry's suit, but rather that federal common law governs the liability clause.[14] Federal courts already have developed the released

valuation doctrine pursuant to the Act's savings clause.[15] Therefore, it is not difficult to determine that federal law, not state law, should govern.[16]

Similarly, *Read–Rite* did not use state law to alter the terms of the airbill that governed the parties' agreement.[17] *Read–Rite* reemphasized what *Wolens* had already established: courts must use the released valuation doctrine to evaluate limited liability clauses in carrier contracts, but the Act does not preempt contract claims premised upon state law that do not attempt to alter the scope of carriers' liability for lost or damaged goods.[18] Thus, we hold that the district court appropriately refused to allow King Jewelry to use California law to modify the liability provision.

---

to goods by interstate common carriers by air").

The Act also precludes application of state law because the modification that King Jewelry seeks to impose pertains directly to the services Federal Express offers. *See Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1261 (9th Cir.1998) (en banc) (concluding that the Act preempts state laws relating to things like the prices of services), *as amended by* 169 F.3d 594 (9th Cir.1999) (en banc).

9. *Wayne*, 294 F.3d at 1184.

10. *See Read–Rite*, 186 F.3d at 1195 (holding that federal common law governs the construction of the airbills); *see also id.* at 1197 ("[W]e agree with the Fifth Circuit that state law regulating the scope of air carrier liability for loss or damage to cargo is preempted by the [Act]."). To hold otherwise would undermine the goal of a "nationally uniform policy governing interstate carriers' liability for property loss," *N.Y., N.H. & Hartford R. Co. v. Nothnagle*, 346 U.S. 128, 131, 73 S.Ct. 986, 97 L.Ed. 1500 (1953), by allowing various state law contract schemes to alter the carriers' obligations under standard contracts.

11. 513 U.S. 219, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995).

12. 186 F.3d 1190.

13. 513 U.S. at 222, 115 S.Ct. 817.

14. In *Wolens*, part of the Supreme Court's rationale in concluding that the Act did not preempt plaintiffs' breach of contract suit was that the Act does not require federal courts to fashion federal common law to govern all aspects of these contract disputes. *Id.* at 232., 115 S.Ct. 817

15. *See Wayne*, 294 F.3d at 1184–85.

16. *Cf. Wolens*, 513 U.S. at 233, 115 S.Ct. 817 ("[The] distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, *with no enlargement or enhancement based on state laws or policies external to the agreement.*") (emphasis added).

17. *Read–Rite*, 186 F.3d at 1197.

18. *Id.* at 1195–98. In fact, *Read–Rite* stated that whether a carrier may contractually limit its liability is not a "routine contract claim, as was presented in *Wolens.*" *Id.* (internal quotation marks omitted). Thus, *Read–Rite* recognized the importance of a uniform federal standard to govern limitation of liability clauses. *Id.* at 1197.

### C. Federal Express satisfied the released valuation doctrine.

 Finally, King Jewelry contends that Federal Express did not comply with the released valuation doctrine. Pursuant to the released valuation doctrine, a carrier may limit its liability if it provides reasonable notice and a fair opportunity to purchase higher liability.[19] The airbill and the Service Guide contained prominent notices of the liability limitation in plain language. This clear and prominent notice shifts the burden to King Jewelry to show that it did not have a fair opportunity to purchase greater liability.[20]

King Jewelry cannot make this showing because it purchased greater than the minimum liability from Federal Express, thus undermining the idea that it did not have a fair opportunity to do just that. The minimum liability is $100.00, and King Jewelry purchased the maximum available for items of extraordinary value, $500.00. The released valuation doctrine only requires a fair opportunity to purchase a higher liability, not necessarily up to the full value of the item.[21] Therefore, the district court appropriately concluded that Federal Express complied with the released valuation doctrine. We hold that the provision limiting Federal Express's liability is valid as a matter of federal common law.

### D. Federal Express should return the excess value charges that King Jewelry paid.

Because we hold that the limitation of liability provision is valid and satisfied the released valuation doctrine, the contract prevented King Jewelry from declaring the value that it attempted to declare on the airbill. Federal Express concedes that to the extent King Jewelry paid Federal Express for excess value protection that it could not receive, Federal Express should return the amount paid. Thus, we amend the district court's judgment to require Federal Express to return the excess value charge in addition to the $500.00 per crate that the district court already imposed.

## IV. CONCLUSION

The district court appropriately concluded that the candelabra were "items of extraordinary value." Even the owner of King Jewelry's own deposition testimony supports this conclusion. Federal common law governs limitation of liability clauses pursuant to the Act. Therefore, in order to successfully limit its liability, Federal Express had to provide reasonable notice of its limited liability and a fair opportunity to purchase higher liability. Because we conclude that Federal Express met this obligation, we affirm. As Federal Express conceded, however, it should return the excess value charge paid in Raymie's unsuccessful attempt to declare a $37,000.00 value rather than the $500.00 to which the contract limited it.

The judgment is AMENDED so as to change the amount owed by Federal Ex-

---

19. *Wayne,* 294 F.3d at 1184–85.

20. *Read–Rite,* 186 F.3d at 1198; *see also Sam L. Majors Jewelers v. ABX, Inc.,* 117 F.3d 922, 930 (5th Cir.1997) (concluding, in case involving a nearly identical limited liability provision, that the provision provided reasonable notice of the limits on liability).

21. *See Wayne,* 294 F.3d at 1184–85; *Kemper Ins. Cos. v. Fed. Express Corp.,* 252 F.3d 509, 513 (1st Cir.) (finding that the fact that the carrier did not offer an option that provided liability at full value does not mean that the option did not provide customers with a fair opportunity to increase liability coverage by paying a higher rate), *cert. denied,* 534 U.S. 1020, 122 S.Ct. 545, 151 L.Ed.2d 423 (2001).

press to $1,685.00, and as so amended, it is AFFIRMED.