In the

# United States Court of Appeals
## For the Seventh Circuit

———————

Nos. 05-3743 & 05-3896

TREIBER & STRAUB, INC., D/B/A
TREIBER & STRAUB JEWELERS,

*Plaintiff-Appellant/*
*Cross-Appellee,*

*v.*

UNITED PARCEL SERVICE, INC. and
UPS CAPITAL INSURANCE AGENCY, INC.,

*Defendants-Appellees/*
*Cross-Appellants.*

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 04-C-0069—**Patricia J. Gorence**, *Magistrate Judge.*

———————

ARGUED FEBRUARY 17, 2006—DECIDED JANUARY 9, 2007

———————

Before FLAUM, KANNE, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* Treiber & Straub, Inc. ("Treiber"), a fine-jewelry store in Wisconsin, needed to return a diamond ring to a California jewelry wholesaler. It turned to United Parcel Service, the world's largest package delivery company and, using the UPS website, it arranged to send the package via "Next Day Air." As part of the transaction, it purchased $50,000 in insurance, the maximum permitted.

The ring was worth more than double that $50,000 limit—a fact that gave rise to Treiber's problems here after UPS lost the package. Treiber reimbursed the wholesaler for the full loss and then filed this lawsuit against UPS and UPS Capital Insurance Agency, Inc., a wholly owned subsidiary of UPS that administers UPS's excess value insurance program. (For simplicity, we refer in this opinion to both defendants as UPS.) Treiber wanted to collect the $50,000 for the lost package to which it believed it was entitled. UPS denied liability, pointing to the disclaimer found in its "Terms and Conditions," its shipping tariff, and its insurance policy. These documents warn (repeatedly) that when customers ship items of "unusual value," defined as those worth more than $50,000, there is no liability at all.

Finding federal jurisdiction proper because the case arose under the rules of federal common law that apply to lost or damaged goods shipped via air freight, the district court granted summary judgment for UPS. The court found that the company's disclaimers gave reasonable notice and were enforceable; it declined to reach Treiber's state law breach-of-contract theory, rejecting UPS's argument that it too arose under federal law because of field preemption. Both UPS and Treiber appealed. We affirm the district court's grant of summary judgment for UPS on the federal common law claim, and we modify the court's decision dismissing the state law claims without prejudice to a dismissal with prejudice.

**I**

Michael J. Straub, the president of Treiber, initiated the shipping of the diamond ring by UPS Next Day Air by going to UPS's website, www.ups.com. His plan was for the ring to be picked up in Wisconsin and delivered to Norman Silverman Co., the California jewelry wholesaler

that owned it. The ring had a value of approximately $105,000. The Terms and Conditions of Service that UPS follows include the following restrictions on service:

> (c) No service shall be rendered in the transportation of articles of unusual value (as defined in the UPS Tariff), including, but not limited to:
>
>> (i) Any package with an actual value of more than $50,000 (U.S.);
>
> . . .
>
>> UPS will not be liable or responsible for loss or damage to: articles of unusual value [as defined in item 460 of the UPS Tariff].

Notwithstanding those exclusions, which Straub now claims were not prominent enough and were thus not properly drawn to his attention, he decided to purchase the maximum insurance permitted, $50,000, paying $174.65 for the policy. On the online airbill in the appropriate box, Treiber filled in "Insured Val. ($50,000.00)."

UPS picked up the ring on September 15, 2003, but the ring never arrived in California. On September 30, 2003, UPS acknowledged that the package was lost. Treiber submitted a claim for the $50,000 it thought was due to it under the policy, but on October 15, 2003, UPS disclaimed any liability because the ring's actual value exceeded $50,000 and thus it was an article of "unusual value." Treiber paid Silverman the ring's actual value of $105,000 and then in January 2004 filed suit against UPS for $50,000.

In order to ship a package using UPS's website, a shipper must first agree to the items described under the heading "My UPS Terms and Conditions," which include a separate document called the "Terms and Conditions of Service." As is common in Internet commerce, one

signifies agreement by clicking on a box on the screen. In addition, a first-time shipper must click a second time to agree to these same terms and conditions. (Regular shippers also receive annually a Rate and Service Guide containing, among other things, the Terms and Conditions of Service, but there is no indication in the record that Treiber was a regular shipper.) The Terms and Conditions of Service include the language we quoted earlier, which states that UPS will not ship articles of unusual value (*i.e.*, those valued at more than $50,000), nor will it be liable for or responsible for loss or damage to such articles.

UPS's Tariff, the "exclusive agreement" between UPS and its shippers, is not short. It is available online at www.ups.com, and it offers a table of contents for easy reference. Item 460, titled "Definition of Articles of Unusual Value, Which Are Not Accepted by UPS for Transportation," repeats that "[s]hippers are prohibited from shipping articles of unusual value via UPS," and it defines the term "articles of unusual value" to include "[a]ny package having a value of more than $50,000." Item 535, titled "Limitations of Liability," also indicates that "UPS will not be liable or responsible for the loss of or damage to any package, the contents of which shippers are prohibited from shipping, which UPS is not authorized to accept, which UPS states that it will not accept, or which UPS has a right to refuse." It too explicitly includes "articles of unusual value (as defined in Item 460)" as falling within that provision. Finally, Item 537 (if one gets that far) removes any remaining doubt about a shipment like Treiber's: it says that "UPS's maximum liability per package shipped domestically . . . shall not exceed $100 regardless of the amount of Excess Value Insurance purchased by the shipper" and that "excess value insurance does not provide any insurance protection for packages or letters having an actual value

of more than $50,000, even if a lesser amount is specified in the insured value field in the UPS shipping system used." The same item continues, "The excess value insurance policy does not cover or excludes coverage for: articles of unusual value (as defined in Item 460)."

Another document, the Excess Value Insurance policy, indicates (twice on the very first page) that it does not cover packages with actual values of more than $50,000. In a bullet point, the policy indicates that "Excess Value Insurance does not provide any protection for packages having an actual value in excess of $50,000 even if a lesser amount is specified in the insured value field" and then refers the reader to the exclusions section. Right below that, the policy contains a section called "What is Covered?" that provides almost word for word the same disclaimer. The warning appears a third time in the Exclusions section. The insurance policy, unlike the airbill generated by using the website or the Terms and Conditions and the Tariff, is not available online.

After the parties gave their consent to have a magistrate judge handle the proceedings, see 28 U.S.C. § 636(c), the district court ruled that Treiber "was provided plain and conspicuous notice of UPS's limitation of liability as it relates to articles of unusual value." With adequate notice, the limitation was binding; the court therefore granted summary judgment for UPS. In addition, concluding that Treiber's breach of contract claim arose under state law and was thus within its supplemental jurisdiction, see 28 U.S.C. § 1367, the court relinquished jurisdiction over that claim. Treiber appeals from the district court's judgment; UPS has cross-appealed, seeking outright dismissal of the breach of contract claim as one that also necessarily arose under federal law.

## II

### A

This case is somewhat unusual in that its alleged federal law basis comes from federal common law, something the parties themselves did not initially realize. Because Treiber is seeking only the $50,000 in insurance proceeds that it claims to have purchased validly, it appears that diversity jurisdiction is unavailable. See 28 U.S.C. § 1332 (amount in controversy must exceed $75,000). We therefore must first assure ourselves that federal question jurisdiction is secure. Normally, when one ships a package via UPS and there is a dispute, that dispute belongs in federal court because of the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706. The Carmack Amendment, however, applies to ground carriers and not to air carriers. See *Arkwright-Boston Mfrs. Mut. Ins. Co. v. Great Western Airlines, Inc.*, 767 F.2d 425, 428 (8th Cir. 1985); *Kemper Ins. Co. v. Federal Exp. Corp.,* 252 F.3d 509, 514 n.5 (1st Cir. 2001) (collecting cases). Thus, when Straub selected "Next Day Air" shipping, he also took this dispute outside the jurisdiction provided by the Carmack Amendment.

In some circumstances, a claim in federal court may arise under federal common law, which is a permissible basis for jurisdiction based on a federal question under 28 U.S.C. § 1331. See *Illinois v. City of Milwaukee,* 406 U.S. 91, 100 (1972). A federal common law contractual claim will support jurisdiction so long as it demonstrates on the face of the complaint a "sufficiently proximate federal interest." *Turner/Ozanne v. Hyman/Power,* 111 F.3d 1312, 1318 (7th Cir. 1997). In this case, the federal interest is the same as the one that underlies the Carmack Amendment for ground carriers: a need for uniformity in interstate shipping and commerce. See *Adams Express Co. v. Croninger*, 226 U.S. 491, 506 (1913) ("[I]t is evident

that Congress intended to adopt a uniform rule and relieve such contracts from the diverse regulation to which they had been theretofore subject."). Several of our sister circuits have already concluded that a suit against a common carrier that uses air rather than ground to transport goods arises under federal common law. See *First Pennsylvania Bank, N.A. v. Eastern Airlines, Inc.*, 731 F.2d 1113, 1115-16 (3d Cir. 1984); *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 928-29 (5th Cir. 1997); *Read-Rite Corp. v. Burlington Air Express, Ltd.*, 186 F.3d 1190, 1195 (9th Cir. 1999); *Nippon Fire & Marine Ins. Co. Ltd. v. Skyway Freight Systems, Inc., et al.*, 235 F.3d 53, 59 (2d Cir. 2000).

In *Sam L. Majors*, the Fifth Circuit offered an extensive analysis of the history of federal common law liability of common carriers as well as the progression of regulation and deregulation of air carriers. It concluded that cases such as this one, for lost goods against common air carriers, arise under federal law. 117 F.3d at 925-29. We are not aware of any circuit that has held otherwise. We therefore join our colleagues in holding that a claim for lost or damaged goods transported by a common air carrier arises under federal common law and thus falls within the district court's federal question jurisdiction. This conclusion also means, at a minimum, that the district court would have supplemental jurisdiction over Treiber's state law contractual claim assuming that it is part of the same constitutional case or controversy, as it appears to be. See 28 U.S.C. § 1367(a). The more important question, as we see below, is whether there really is a separate state contract theory left once federal law has spoken to this matter.

**B**

On the merits, Treiber contends that the disclaimer of liability for packages of "unusual value" on UPS's website

is not clear and conspicuous, a requirement that it believes federal common law imposes by analogy to the Carmack Amendment. This failure, Treiber reasons, resulted in its lack of notice or actual knowledge that there would be no insurance coverage (rather than coverage limited to $50,000) because the value of the package shipped exceeded $50,000. The "article of unusual value" provisions, it asserts, are "literally buried among all the other extensive terms and conditions on the vast UPS website." We review the district court's grant of summary judgment *de novo*. See *Valentine v. City of Chicago*, 452 F.3d 670, 677 (7th Cir. 2006).

An initial question that the parties did not discuss is whether federal common law includes a specific requirement of "clear and conspicuous" notice in these circumstances; a generic requirement of "reasonable" notice would be more in keeping with a common law rule. We find it unnecessary to resolve that issue, as we explain below, but we note that a full analysis for the present case would need to take into account not only the analogy to the Carmack Amendment but also the McCarran-Ferguson Act, 15 U.S.C. §§ 1011-12, which addresses the regulation of insurance. Here, the district court (understandably) bypassed those preliminary questions and evaluated the UPS airbill in the terms the parties were discussing. It adopted a test from the Fifth Circuit's *Sam L. Majors* case, looking first to the "physical characteristics of the air bill" to determine "whether they provide reasonable notice to the shipper" and then to the "conditions under which the shipment was made." 117 F.3d at 930. See also *Casas v. American Airlines, Inc.*, 304 F.3d 517, 524 (5th Cir. 2002) ("A court first examines whether the contract documents provide reasonable notice to the customer, and then considers whether the conditions under which the shipment was made offered the customer an opportunity to receive notice of the liability

limitations."). In *Sam L. Majors*, as in this case, a jeweler shipped jewelry that was lost. The shipper used an air bill that had language on the back that excluded liability for the loss of jewelry. The air bill also incorporated by reference a "service guide," which was readily available and repeated the disclaimer that the air carrier was not liable for the loss of jewelry. 117 F.3d at 930. The Fifth Circuit decided that the prohibition of the shipment of jewelry in the air bill was sufficiently plain and conspicuous and that the shipper was experienced enough to make the limitation of liability enforceable.

Our examination of the relevant pages from UPS's website satisfies us that UPS provided adequate notice that customers were not permitted to ship items of "unusual value" (meaning worth more than $50,000) and that UPS would not be liable, nor would it offer insurance—even limited to $50,000—on the defined high-value items. Although this case differs slightly from *Sam L. Majors* in that UPS may not have provided one single document that explained everything about the limitation of liability, that distinction does not call for a different result in light of everything else that was available to the shipper. The fact that Straub had to agree not once, but twice, to abide by the Terms and Conditions set forth in order to ship the package, is enough to ensure that Treiber had clear and reasonable notice of the rules. The Terms and Conditions of Service repeat the disclaimer of liability several times and refer pointedly to the pertinent parts of the Tariff, which is also available on the UPS website.

UPS does not have the burden of proving that Treiber had actual knowledge of the pertinent restrictions. As the district court observed, "[f]ailure of the plaintiff to read the matter plainly placed before it cannot overcome the presumption that the plaintiff assented to the terms of the carrier." This is basic contract law: one cannot accept a

contract and then renege based on one's own failure to read it. See also *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d Cir. 2004) ("While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract. It is standard contract doctrine that when a benefit is offered subject to stated conditions, and the offeree makes a decision to take the benefit with knowledge of the terms of the offer, the taking constitutes an acceptance of the terms, which accordingly become binding on the offeree.") (citing RESTATEMENT (SECOND) OF CONTRACTS § 69(1)(a) (1981)). It would be different if, for example, Treiber arranged for the shipment in a face-to-face transaction and was never given a copy of or required to agree to abide by the Terms and Conditions of Service. See, *e.g.*, *E.J. Rogers, Inc. v. United Parcel Service, Inc.*, 338 F. Supp. 2d 935 (S.D. Ind. 2004). While Treiber may not be a regular user of the UPS website, the company is a business customer that knew about the high value of its package—indeed, it is reasonable to assume that most packages it shipped were relatively high in value. Straub should have taken the time to examine the provisions of the Tariff and/or the Terms and Conditions of Service before he sent an item worth more than $100,000 via UPS.

Treiber also contends that UPS's disclaimer of liability violates the federal "released value doctrine," which grew out of the Supreme Court's decision in *Hart v. Pennsylvania R. Co.*, 112 U.S. 331, 343 (1884). Under that doctrine, "if a carrier wishes to enforce a limited liability provision, its contract must offer the shipper (1) reasonable notice of limited liability, and (2) a fair opportunity to purchase higher liability." *Read-Rite Corp.*, 186 F.3d at 1198. We see no problem with UPS's practices in that respect. UPS initially limits its liability to $100, and then it offers its customers the opportunity to purchase higher liability/insurance up to $50,000. If a shipper wants

to send a package with an actual value of more than $50,000, however, UPS will neither accept nor insure the package. This is a business decision that UPS is entitled to take. If it were to do what Treiber wants, and permit all packages with a value greater than $50,000 to be insured at the $50,000 level, it would distort the mix of claims it is insuring, skewing it toward the high-value end, necessitating a significant change in premiums. The risk of theft would also increase for packages with higher declared values.

UPS's policy is only marginally different from the one adopted by Federal Express that was discussed in *King Jewelry, Inc. v. Federal Exp. Corp.*, 316 F.3d 961, 962-63 (9th Cir. 2003). FedEx permits shippers to send packages worth up to $50,000, but it limits liability for items of extraordinary value to $500. The Ninth Circuit found that this policy did not violate the released value doctrine. *Id.* at 966. Nothing in the released value doctrine suggests that a common carrier is obliged to accept every package. According to the Tariff, UPS also rejects, among other things, poorly wrapped packages, human body parts, animals, currency, and negotiable instruments. As a practical matter, if UPS did not refuse to insure such packages, shippers might do what Treiber did here, which was to conceal a violation of UPS's policy against accepting high-value items by indicating on the air bill the insured value (of $50,000 or less) rather than the actual value. In that way, Treiber effectively breached the shipping contract; UPS's refusal to accept liability for packages its customers ship deceptively in violation of rules set out in the Terms and Conditions of Service and the Tariff does not violate the "released value doctrine."

**C**

After it dismissed Treiber's federal common law claim against UPS, the district court said that it was declining

to exercise supplemental jurisdiction over the state law breach of contract theory. In so doing, it rejected UPS's argument that this part of the case was preempted by federal law. The court relied on *American Airlines v. Wolens*, 513 U.S. 219, 222 (1995), in which the Supreme Court held that the Airline Deregulation Act of 1978 (ADA), 49 U.S.C. App. § 1305(a)(1), did not preempt regular breach of contract claims against airlines. While our case, of course, does not arise under statute but under the federal common law, the principle seems equally appropriate. There is no reason to assume that federal common law preempts an even wider swath of cases than the ADA, which overrides any state law that relates to rates, routes, or services. This is a broad standard that leaves to state law only breach of contract claims. See *id.* at 232 ("Nor is it plausible that Congress meant to channel into federal courts the business of resolving, pursuant to judicially fashioned federal common law, the range of contract claims relating to airline rates, routes, or services. The ADA contains no hint of such a role for the federal courts.").

The problem is that this case is only nominally about a shipper seeking to *enforce* a contract that it contends UPS breached. In reality, Treiber wants to use state law to *avoid* the part of the contract that limits the carrier's liability. Its claim is therefore not for the conventional breach of contract contemplated in *Wolens*. Treiber cannot prevail unless we were to require "enlargement or enhancement [of the contract] based on state laws or policies external to the agreement." 513 U.S. at 233. See *King Jewelry*, 316 F.3d at 965 ("[W]e hold that the district court appropriately refused to allow King Jewelry to use California law to modify the liability provision."). Because it would compel a certain kind of service, this would, in effect, be a rule "'having the force and effect of law relating to rates, routes, or services of any air

carrier. . . .' 49 U.S.C. App. § 1305(a)(1)." *Wolens,* 513 U.S. at 222-23. Rules of this type are explicitly preempted by the ADA and, we hold, are equally preempted by the analogous federal common law for air bills. The fact that one part of the contract deals with insurance does not alter our conclusion. UPS's insurance contract and its shipping contract are so intertwined that to permit state contract law to affect one is to allow it to affect the other. The shipping contract between a common carrier of packages by air and the shipper, while enforceable in state court, cannot be rewritten by state law. Since that is what Treiber seeks to do, we must find that the state law breach of contract theory in this case is preempted.

## III

For these reasons, we AFFIRM the judgment of the district court in favor of UPS on the federal common law claim. We MODIFY the court's decision insofar as it dismisses the state law claim without prejudice. Because this theory is preempted by federal law, the judgment dismissing this claim must be changed to one with prejudice. UPS is entitled to recover its costs on appeal.

A true Copy:

   Teste:

                                    _____
                                    *Clerk of the United States Court of*
                                    *Appeals for the Seventh Circuit*