Filed 4/22/15  Gibson v. United Parcel Service CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ROBERT D. GIBSON,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>UNITED PARCEL SERVICE, INC.,<br><br>        Defendant and Respondent. | A141645<br><br>(Alameda County<br>Super. Ct. No. RG13669413) |

Robert D. Gibson appeals from the trial court's dismissal of his action against United Parcel Service, Inc. (UPS) after the court sustained without leave to amend UPS's demurrer to Gibson's second amended complaint.  We affirm.

FACTUAL AND PROCEDURAL
BACKGROUND

Gibson initiated this case by filing a complaint against UPS in March 2013.  UPS demurred to the complaint, but Gibson filed a first amended complaint before the trial court ruled on the demurrer.  In the first amended complaint, Gibson alleged he instructed a member of his family to post a parcel from Sacramento to an address in Charlotte, North Carolina.  The family member posted the parcel at a UPS store in Sacramento for overnight delivery by next-day air service.  The parcel weighed 67 pounds, cost $373.45 to ship, was assigned parcel No. 53596568, and was given a tracking number.

Exhibit A to the first amended complaint is an investigation report authored by Special Agent Brian Fichtner of the State Bureau of Narcotic Enforcement (Bureau).  In it, Agent Fichtner states he received a call from a UPS security representative at the UPS

shipping facility in Sacramento and was told that a parcel had been audited and found to contain money. Agent Fichtner went to the facility and was presented with parcel No. 53596568, which he described as a heavily-taped, brown cardboard box approximately 18 inches in cubic dimensions. The box listed the sender as "Josh Howell," with the return address as the UPS Store at Natomas Crossing Drive in Sacramento, and the recipient was listed as "Jeff Howell" at an address in Charlotte, North Carolina.[1] Agent Fichtner saw, in plain view inside the box, nine large, clear vacuum-packed, heat-sealed, food-saver bags containing United States currency. He deployed his narcotic trained dog to sniff the parcel, and the dog alerted positively to the presence of a narcotic odor. Agent Fichtner then photographed the money, gave a property receipt to UPS personnel, and took the parcel to the Bureau's Sacramento office for safekeeping. The money was later transported to the Bank of America where it was counted and converted to a cashier's check in the amount of $658,830.[2] Agent Fichtner referred the case to the United States Attorney's Office for purposes of forfeiture.[3]

The first amended complaint alleged that UPS personnel acted as "agents of law enforcement, and without a court's order or warrant did actively entered [sic] into a conspiracy with law enforcement." It asserted causes of action for breach of contract,

---

[1] In the first amended complaint, Gibson alleged that he is otherwise known as "Jeff Howell."

[2] Although the report concludes the owner of the money has yet to be identified, Fichtner described in his report how in the days immediately following his seizure of the parcel he received telephone calls from an individual identifying himself as both "Jason Howell" and "Jeff Howell" asking about the whereabouts of the parcel. But when Agent Fichtner finally told the caller that damage to the parcel had revealed it contained money, the caller hung up and did not call back, and Agent Fichtner was unable to reach him.

[3] Subsequently, the United States filed a verified complaint for forfeiture in rem against the $658,830. Gibson filed a claim to the currency and an answer to the complaint for forfeiture. On October 15, 2012, the United States District Court for the Eastern District of California entered a final judgment of forfeiture in favor of the United States and ordered "all right, title, and interest of Robert D. Gibson" in the currency "shall be forfeited to the United States." This judgment was later affirmed by the Ninth Circuit Court of Appeals.

2

fraudulent transfer of property, conspiracy to defraud, constructive trust, "assumpsit bailee contract," and damages for bailment and conversion in the amount of "$658,830.00 and 25% interest per annum."

UPS filed a demurrer to the first amended complaint contending that the claims were vague and conclusory; that the state-law claims were preempted by federal law; that Gibson lacked standing to assert a claim against UPS; and that Gibson could not recover for shipment of prohibited items. The trial court sustained the demurrer. Although it gave leave to amend, it ordered Gibson not to "allege causes of action not alleged in the first amended complaint. Most importantly, Plaintiff shall allege facts to show he has standing to sue and that his claims are not barred by federal law and the terms of the UPS shipping contract which prohibits shipment of prohibited items."

Gibson then filed a second amended complaint. In it, he alleged he had instructed his brother and other family members to pack up and arrange for the shipping of his deceased father's household goods and the liquidation of his assets. He asserted that "During this process there was a mix up and or misunderstandings as to the cash proceeds, and the wrong property was shipped via UPS. The Plaintiff Robert Gibson filled out/addressed the Broker Agreement and signed it, without full knowledge or express agreement that Cash/Currency was a prohibited item, under the Defendant's policy/tariff, because it was never the deliberate intent by the Plaintiff to ship currency." Gibson also alleged that the shipping terms were not "clear and conspicuous and intelligible," and he did not knowingly agree to any waiver of liability in regard to "Prohibited Items." Gibson asserted standing under 49 United States Code section 13102(18) as a "shipper" because "this Plaintiff is the lawful assignee based upon the seller[']s receipt and order."[4]

---

[4] "The term 'individual shipper' means any person who— [¶] (A) is the shipper, consignor, or consignee of a household goods shipment; [¶] (B) is identified as the shipper, consignor, or consignee on the face of the bill of lading; [¶] (C) owns the goods being transported; and [¶] (D) pays his or her own tariff transportation charges." (49 U.S.C.A. § 13102(13).)

3

UPS filed a demurrer on the same grounds it had demurred to the first amended complaint. It noted that Gibson had, contrary to the trial court's directions, added new causes of action, including a claim for intentional infliction of emotional distress. After briefing was complete, the court issued a tentative ruling in UPS's favor. Gibson contested the tentative ruling and appeared in propria persona by telephone at the hearing.[5] After hearing oral argument, the trial court filed an order entitled "Order, Demurrer Sustained" the same day, in which it affirmed its tentative ruling, sustained the demurrer, denied leave to amend, and dismissed the case. The order stated, "After several opportunities Plaintiff has failed to state facts sufficient to constitute a cognizable cause or causes of action against Defendant. Most importantly, Plaintiff has failed to allege facts to show he has standing to sue and that his claims are not barred by federal law and the terms of the UPS shipping contract which prohibits shipment of prohibited items." UPS filed a notice of entry of order on demurrer and dismissal of the case on April 21, 2014.[6]

DISCUSSION

A. *Standards of Review*

In an appeal from a judgment entered upon a demurrer sustained without leave to amend, we review the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory. (*McClain v. Octagon Plaza, LLC* (2008) 159 Cal.App.4th 784, 791-792.) In doing so, we must assume the truth of "(1) all facts properly pleaded by the plaintiff, (2) all facts contained in exhibits to the complaint, (3) all facts that are properly the subject of judicial notice, and (4) all facts that reasonably may be inferred." (*Neilson v. City of California City* (2005) 133 Cal.App.4th

---

[5] No reporter's transcript of the hearing appears in the appellate record.

[6] An appeal may not ordinarily be taken from an order sustaining a demurrer but only from the order of dismissal or final judgment that follows. (*Kong v. City of Hawaiian Gardens Redevelopment Agency* (2002) 108 Cal.App.4th 1028, 1032, fn. 1.) Although no separate order of dismissal or final judgment appears to have been issued in this case, the challenged order states in pertinent part, "The case is DISMISSED." Thus, we construe the challenged order as an appealable order of dismissal.

1296, 1305.) But we do not accept the truth of legal contentions, conclusions of law, or deductions drawn from those contentions or conclusions. (*Ibid.*) We may affirm on any basis stated in the demurrer, regardless of the ground on which the trial court based its ruling. (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324.)

We review the court's refusal to allow leave to amend under the abuse of discretion standard. (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.) In applying this standard, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

B.      *The Trial Court Properly Sustained the Demurrer*

In his second amended complaint, Gibson alleges UPS is liable for the seizure by law enforcement officials of the contents of the parcel, and he seeks damages under multiple causes of action under state contract and tort law. We conclude, however, that the trial court properly sustained UPS's demurrer without leave to amend because Gibson's claims are preempted by federal law, and Gibson cannot amend the complaint to state a claim under federal law.

UPS handled the package as either a motor carrier and freight forwarder because the parcel was seized before it was shipped by air or as an air carrier because the delivery service purchased was UPS next-day air service. If UPS was acting as a motor carrier and freight forwarder, any claim against it is governed by the federal Carmack Amendment to the Interstate Commerce Act (49 U.S.C. § 14706). If UPS was acting as an air carrier, any claim against it is governed by the preemptive provisions of the federal Airline Deregulation Act (ADA) (49 U.S.C. § 41713) and federal common law. In either case, Gibson's state-law claims are preempted.

The Carmack Amendment governs the liability of motor carriers under receipts and bills of lading and provides " 'a uniform national liability policy for interstate carriers.' " (*Hall v. North American Van Lines, Inc* (9th Cir. 2007) 476 F.3d 683, 687.) Thus, if UPS acted as a motor carrier in transporting the parcel to its shipping facility in

5

Sacramento, all state claims against it related to the loss, damage, or delay of the parcel are completely preempted by the Carmack Amendment. (*Hall*, at p. 689 ["It is well settled that the Carmack Amendment constitutes a complete defense to common law claims alleging all manner of harms[,]" including "delay," "mistaken delivery," "loss," and "fraud and conversion"]; see *White v. Mayflower Transit, L.L.C.* (9th Cir. 2008) 543 F.3d 581, 584-585 [Carmack Amendment "completely preempts state[-]law claims alleging delay, loss, failure to deliver and damage to property" and "constitutes a complete defense to common law claims against interstate carriers for negligence, fraud and conversion"].) Similarly, if UPS acted as an air carrier in accepting the parcel for delivery by next-day air service, any claim against it is governed by the ADA. (Cf. *Power Standards Lab, Inc. v. Federal Express Corp.* (2005) 127 Cal.App.4th 1039, 1044-1045 [essence of Federal Express service is the transportation of freight by air, plaintiff's lawsuit is "clearly founded on the unsatisfactory manner in which Federal Express performed that service," therefore lawsuit was "related to a service of an air carrier" for purposes of ADA preemption].) The ADA preempts all state "law[s], regulation[s], or other provision[s] having the force and effect of law related to a price, route, or service of an air carrier" (49 U.S.C. § 41713(b)(1)), including state common-law rules and causes of action where, as here, they relate to an air carrier's service of shipping parcels by air. (See *Northwest, Inc. v. Ginsberg* (2014) ___ U.S. ___ [134 S.Ct. 1422, 1430] [concluding that " 'other provision having the force and effect of law' [under ADA] includes common-law claims"].) Thus, regardless of UPS's status, the trial court properly sustained the demurrer on federal preemption grounds.

Because Gibson's state-law claims are preempted under applicable federal law, any claim Gibson has against UPS lies, if at all, under the Carmack Amendment or federal common law.[7] (*Read-Rite Corp. v. Burlington Air Express, Ltd.* (1999) 186 F.3d

_____

[7] For purposes of analysis only, we assume Gibson could establish standing to assert a federal claim, a point which UPS hotly disputes.

1190, 1195 ["federal common law applies to loss of or damage to goods by interstate common carriers by air"].)[8]  Gibson cannot establish such a claim for several reasons.

First, to establish a prima facie claim against UPS under federal law, Gibson must prove (1) delivery of goods in good condition, (2) goods arrived in damaged condition or were lost, and (3) damages.  (See *Missouri Pacific Railroad Co. v. Elmore & Stahl* (1964) 377 U.S. 134, 138.)  Here, Gibson cannot amend the complaint to state a viable claim for damages because any possessory interest Gibson may have had in the goods (i.e., the currency seized) has been forfeited to the federal government.  (See fn. 3, *ante*.)

In addition, under well-settled federal common law, a common carrier is not an absolute insurer, but "is liable for damage to goods transported by it unless it can show that the damage was caused by '(a) the act of God; (b) the public enemy; (c) the act of the shipper himself; (d) *public authority*; (e) or the inherent vice or nature of the goods.' " (*Missouri Pacific Railroad Co. v. Elmore & Stahl, supra*, 377 U.S. at p. 137, italic added.)  In this case, the cause of any "loss" was the seizure of the currency by a law enforcement official who believed it was "for the purchase of, or . . . the proceeds from the sales of narcotics."  Because any loss was due to an act of public authority, Gibson cannot amend the complaint to state a viable claim against UPS.  (See *ibid.* [under federal common law, carrier is not liable for loss to goods transported if loss was caused by one of five "excepted causes relieving the carrier of liability," including "public authority"]; see also *Beta Spawn, Inc. v. FFE Transportation Services, Inc.* (3d Cir. 2001) 250 F.3d 218, 226 ["Once a plaintiff has established a prima facie case under the Carmack

---

[8]  Whereas courts have developed the contours of Carmack Amendment preemption, the amendment itself specifically provides a remedy enforceable in state court for loss or damage to goods limited to "the actual loss or injury to the property." (See 49 U.S.C.A. § 11706(a), (d)(1).)  In comparison, the ADA specifically preempts state laws relating to the service of an air carrier but contains a savings clause preserving "any other remedies provided by law" (49 U.S.C. § 40120(a), (c)), which courts have construed as "preserving the clearly established federal common law cause of action against air carriers for lost shipments."  (*Sam L. Majors Jewelers v. ABX, Inc.* (5th Cir. 1997) 117 F.3d 922, 929; see *Power Standards Lab, Inc. v. Federal Express Corp., supra,* 127 Cal.App.4th at pp. 1050-1051.)

Amendment, the burden shifts to the carrier to prove that it was free from negligence and that the damage was caused solely" by public authority or other excepted cause].)[9] Thus, Gibson has failed to show the trial court abused its discretion in sustaining the demurrer without leave to amend. (See *Gutkin v. University of Southern California* (2002) 101 Cal.App.4th 967, 976 ["[I]f no liability exists as a matter of law, we must affirm that part of the judgment sustaining the demurrer, and if the plaintiff cannot show an abuse of discretion, the trial court's order sustaining the demurrer without leave to amend must be affirmed. [Citation.] 'The burden is on the plaintiff . . . to demonstrate the manner in which the complaint might be amended' "].)

In sum, the trial court properly granted UPS's demurrer to the second amended complaint and did not abuse its discretion in denying further leave to amend.[10]

DISPOSITION

The judgment is affirmed.

---

[9] Furthermore, we note under federal common law that the carrier's tariff "governs not only the nature and extent of [the carrier's] liability but also the nature and extent of the shipper's right of recovery." (*North American Phillips Corp. v. Emery Air Freight Corp.* (2nd Cir. 1978) 579 F.2d 229, 233; see also *King Jewelry, Inc. v. Federal Express Corp.* (9th Cir. 2003) 316 F.3d 961, 964 [airbill and service guide formed the contract between the parties].) Here, the applicable UPS tariff (effective July 12, 2010) is included in the clerk's transcripts. We do not consider it, however, because it was not a part of the relevant complaint, and the trial court did not take judicial notice of it. Still, while the tariff is not a basis for affirming the trial court ruling on the demurrer, we cannot help but observe that it appears to be another insurmountable impediment to a federal common law claim for contract damages.

[10] In his reply brief, Gibson contends we "must view this entire case under the analysis of the Fourth Amendment" and argues that seizure of the package by the Bureau of Narcotics Enforcement after an "unlawful drug dog sniff" violated the Fourth Amendment. This argument, raised for the first time in the reply brief, is irrelevant to any claim against UPS in this appeal.

_____
Humes, P.J.

We concur:


_____
Dondero, J.


_____
Banke, J.